# In the United States Court of Federal Claims

**No. 14-711C**
**Filed: April 12, 2016**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * **STROMNESS MPO, LLC,** **Plaintiff,** v. **UNITED STATES,** **Defendant.** * * * * * * * * * * * * * * * * * * * * | **Partial Motion to Dismiss for Failure to State a Claim; Contract Interpretation.** |

**Stephen B. Hurlbut**, Akerman LLP, Washington, D.C., for plaintiff. With him was **Harold J. Hughes**, Ford and Hugh, LLC, Lehi, UT.

**Anand R. Sambhwani**, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With him here **Martin F. Hockey, Jr.**, Assistant Director, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C. Of counsel was **Shoshana O. Epstein**, Office of the General Counsel, United States Postal Service.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

Plaintiff, Stromness MPO, LLC (Stromness MPO),[1] filed a complaint in this court appealing a contracting officer's denial of its claim alleging, in part, that the United States Postal Service improperly terminated a lease for a postal facility in Magna, Utah. Plaintiff, and plaintiff's predecessors-in-interest, entered into two leases with the United States Postal Service pertaining to the same, single post office building in Magna, Utah. The first

[1] Plaintiff is an entity owned by the Stromness family, which also owned Build, Inc. and MPO Leasing, the predecessors-in-interest to Stromness MPO and to the leases pertaining to the Magna Postal Service building. In response to questions posed by this court, defendant acknowledged in its submission on February 3, 2016 that Build, Inc. and MPO Leasing each assigned its lease to Stromness MPO, and that, through the assignments, Stromness MPO assumed the obligations of the Phase I and II leases such that there is privity of contract with the government.

lease, which was entered into in January 1997, concerned the Magna Post Office facility. The second lease, which was entered into in January 2000, concerned the Salt Lake City District Training Center. Both the Magna Post Office facility and the District Training Center were located within the same Magna Post Office building. Plaintiff alleges that the two leases represented two phases of the same overall building project. Plaintiff's claim to the contracting officer, and now in this court, alleges, in part, that the two leases represent a single, unified agreement for the entire Magna Post Office building and that "the Postal Service may not be permitted unilaterally to terminate a portion of its unified lease."

On January 27, 1997, plaintiff's predecessor-in-interest, Build, Inc., and the United States Postal Service entered into a lease agreement for the construction and lease of a postal facility in Magna, Utah. The lease agreement identified the "Facility Name/Location" of the lease as "Magna – Main Post Office," and the lease agreement also indicated that it was labeled "Project: E20321." The lease agreement specified that it was for a 20-year term, beginning April 1, 1998 and ending March 31, 2018, with annual rent of $234,851.00. The lease agreement contained two subsequent five-year renewal options. The lease agreement provided that "[t]he Lessor hereby leases to the Postal Service and the Postal Service leases from the Lessor the following premises, hereinafter legally described in paragraph 9." Paragraph 9 provided the legal description of the premises as "[t]he Westerly most 115,486 Square Foot Parcel of Land identified as Salt Lake County Parcel No. 14-20-379-004. . . . Together with the Southwest 1/2 of the Vacated County Road consisting of a 9,805 Square Foot Parcel of Land." The lease agreement explained that, upon the parcel of land, "is a SINGLE STORY FRAME BUILDING" with an overall total site area of 134,553 square feet, which included net floor space of 6,498 square feet. (capitalization in original). Throughout their filings, both parties referred to this lease as the "Phase I" lease.

The Phase I lease was amended on October 26, 1998, through the Phase I lease Amendment and Addendum, when the Postal Service and lessor agreed to "[a]mend the original lease to include additional square footage" and make other improvements. According to plaintiff, this additional interior square footage was termed "'Phase II'" of the same building project initiated under the Phase I lease. Plaintiff alleges that the October 26, 1998 Phase I lease Amendment and Addendum was drafted by the Postal Service and "provided the floor plan and the governing terms for what the Postal Service termed the 'Phase II construction.'" According to plaintiff, "[t]he Phase I lease Amendment also set out the size, configuration, uses, parking, termination terms, and rent for the Phase II space." Plaintiff alleges that, before the October 26, 1998 amendment, the Postal Service had directed its predecessor-in-interest, Build, Inc., to add 5,374 net square feet of interior space and then, later, in the Phase I lease Amendment and Addendum, the Postal Service added this square footage to the lease. The Phase I lease Amendment and Addendum states, however, that "[a]s a result of the USPS requiring additional net interior space, and the Lessor proceeding with Phase II construction, without authorization, a situation was created that requires amending said lease." According to the Phase I lease Amendment and Addendum, which was attached to plaintiff's amended complaint, the lease was amended to add "an additional 1,500 net interior square feet" so that the "new net interior sq.ft. will reflect the original number of 6,498, plus 1,500 sq. ft. (additional

required footage for postal operations) and 255 sq. ft. (corridor space) for a total net interior square footage of 8,253." The amendment explained that this new net interior square footage "was included in the original lease and identified as covered enclosed parking."

Plaintiff also alleges that the Phase I lease Amendment and Addendum "established an 'annual lease rate . . . for Phase II' beginning at $323,232.00," and "explicitly provided that the Plaintiff could lease out the Phase II space to non-postal tenants, while preserving the Postal Service's right of first refusal, and to recover full use of the space." A review of the Phase I lease Amendment and Addendum reveals that it provided an "annual lease rate" for "Phase II (total building occupancy)," with a present annual lease rate set at $323,232.00. The amendment also provided lease rates for subsequent terms "up to and including 36 months after occupancy."

On January 18, 2000, the Postal Service and plaintiff's predecessor-in-interest, MPO Leasing, executed a second lease, which the parties refer to as the "Phase II" lease. The lease agreement identifies the "Facility Name/Location" as "SALT LAKE CITY – DISTRICT TRAINING CENTER," and the agreement also indicates that it was labeled "Project: E35434." (capitalization in original). The Phase II lease agreement provided that "[t]he Lessor hereby leases to the Postal Service and the Postal Service leases from the Lessor the following premises, hereinafter legally described in paragraph 8." Paragraph 8 provided the legal description of the premises as:

> A portion of the Westerly most 115,486 square foot Parcel of Land identified as Salt Lake County Parcel No. 14-20-379-004 together with the Southwest 1/2 of the vacated County Road consisting of a 9,805 square foot parcel of land. Located in Salt Lake County, UT. Also know [sic] as 8450 W 2700 South, Magna, UT. 84044-9998.

The lease explained that, upon this land parcel, was a "one story brick/block building" with 5,374 square feet of "Net Floor Space" and 2,000 square feet of "Parking and Maneuvering." The Phase II lease was originally for a period of five years, beginning January 1, 2000 and ending December 31, 2004, and included three, four-year renewal options. On July 31, 2002, the Phase II lease was amended "[t]o extend the terms and conditions of the said Lease . . . for a term beginning 01/01/2005 and ending 12/31/2012 at an annual rental of $108,149.00." Thus, the contract expiration date for the Phase II lease was extended eight years, from December 31, 2004 to December 31, 2012.

On September 4, 2012, the Postal Service issued a notice of termination to plaintiff regarding "MAGNA – DISTRICT TRAINING CENTER," or the Phase II lease agreement. (capitalization in original). The notice explained that "the Lease will terminate upon its expiration date, 12/31/2012." On December 20, 2012, plaintiff's counsel sent a letter to the contracting officer requesting a reconsideration and withdrawal of the notice of termination or, in the alternative, that the termination be delayed by ninety days. In this letter to the contracting officer, plaintiff explained that the Phase II lease agreement was created merely to "paper over" a problem created during construction at the Magna Post Office facility. Plaintiff's letter states that:

> The Postal Service entered into a New Construction Lease Agreement with the Stromness family for the construction of a new Main Post Office in Magna (the Phase I lease). While the new building was under construction, and at the request and direction of local postal managers, the lessors expanded the interior space of the building. Near completion, when it turned out that the local postal managers needed higher-level approval, a second lease (the Phase II lease) was eventually drafted to paper over the problem, with the peculiar result that the Phase I lease covers all the land and the Main Post Office building, while the Phase II lease purports to cover a mostly undefined interior island of space on the land and within the building covered by the Phase I lease.

Plaintiff's December 20, 2012 letter to the contracting officer also asserted that the Magna Post Office facility is "one unitary entity," that "the Phase II lease is not an integrated document," and that "the legal description of the premises to be covered by the Phase I and Phase II leases is substantially identical." According to plaintiff, the contracting officer did not respond to this letter.

On May 15, 2013, plaintiff submitted a certified claim to the contracting officer seeking a contracting officer's final decision. Plaintiff argued, in part, that the Phase I and II leases, in reality, constitute a unified, single lease and must be treated as such. In its claim to the contracting officer, plaintiff asserted that "[i]n the late 1990's the Postal Service entered a New Construction Lease Agreement with the Stromness family for the construction and leasing of the Magna, Utah, Main Post Office (Project: E20321); this lease was entered on January 27, 1997, and was termed the 'Phase I' lease." Plaintiff alleged in its claim that, during construction of the post office, it was directed by authorized Postal Service personnel to expand the interior space of the building. Plaintiff asserted that this new construction was confirmed by an amendment to the lease on October 26, 1998, in which the new construction was referred to as the "'Phase II' construction." According to plaintiff, however, "there was no formal lease covering that additional Phase II space" and it was not until the construction was near completion that a second lease, the Phase II lease, was "drafted to paper over the problem." In arguing that the Phase I and II leases actually constitute a single, unified lease, plaintiff contended that "the Magna facility is one unitary entity and has always been operated as such," that "the Phase II lease is not an integrated document" and defendant cannot pretend that "the overlapping Phase I and Phase II leases can be separated." Plaintiff argued in its claim that "the Postal service is not free to pick a portion of its unified lease to terminate, and it remains liable for its agreed to rent." The claim sought the "per annum rental rate specified by the Postal Service in its Phase II lease: $136,877.00 from January 1, 2013, until December 31, 2014, and $153,987.00 until the end of 2019."[2]

---

[2] Renewal option 2 of the Phase II lease ended on 12/31/2014 and the specified per annum rental rate was $136,877.00. The renewal option 3 effective date was 1/1/2015 until 12/31/2019 and the specified per annum rental rate was $153,987.00. For reasons plaintiff may be able to explain, plaintiff's claim to the contracting officer appears to rely on the renewal option dates in the original Phase II lease instead of the renewal option

The contracting officer issued a final decision to plaintiff on August 15, 2013, which denied plaintiff's claim in full. In her final decision, the contracting officer asserted that the "1997 Main Office Lease, as amended, and the 2000 District Training Center Lease, as amended, are not one unified lease." The contracting officer stated that "[t]he two leases are distinct" because they were entered into at different times and with different occupancy dates, that the demised premises were different, and that the leases had separate rental obligations and tax reimbursement obligations. The contracting officer asserted that "[f]rom January 2000 through December 2012, the Postal Service made separate rental payments and tax reimbursements from separate finance numbers for the Main Office and the District Training Center." The contracting officer concluded that "[t]he Postal Service properly terminated the District Training Center Lease and so the Postal Service is not responsible for any further rent, taxes or utilities associated with this space."[3] Plaintiff's complaint in the above-captioned case appeals the contracting officer's final decision and includes six counts.

Plaintiff subsequently filed an amended complaint and defendant moved to dismiss Counts I, IV, V, and VI for lack of subject matter jurisdiction because, according to defendant, plaintiff did not have standing to bring those claims. After responding to questions raised by the court and submitting supplemental briefing, however, as noted above, defendant voluntarily withdrew its jurisdictional challenges to Counts I, IV, V, and VI on February 3, 2016. Therefore, the only remaining issue on defendant's partial motion to dismiss filed pursuant to Rule 12(b)(6) (2015) of the Rules of the United States Court of Federal Claims (RCFC) for failure to state a claim for relief, is Count IV of plaintiff's amended complaint. Count IV alleges that the "Postal Service itself viewed and termed its additional space requirements as a 'phase' rather than as a separate building," and that "based on the terminology the Postal Service used in drafting its leases, and on the physical configuration of the building itself, it is clearly more appropriate and reasonable to treat the leases as two parts of a single lease." According to plaintiff, the "Postal Service created a two-phase lease, and, by purporting to terminate the second phase, breached any possibility of anyone other than the Postal Service using the Phase II space." Under Count IV, plaintiff

> requests that the Court enter a declaratory judgment integrating the lease agreements, and that the Court interpret the agreement to require the Postal Service to honor the provisions of the agreement which will allow the Phase II space to be leasable or to reasonably compensate Plaintiff for the space.

---

periods under the subsequent Phase II lease amendment executed on February 24, 2010.

[3] Plaintiff submitted a supplemental certified claim and request for a contracting officer's final decision on January 21, 2015, which re-asserted its claim that the "Postal Service interpret and construe its Phase I and Phase II leases as an integrated agreement." In response, the contracting officer issued a final decision on March 18, 2015, that repeated its previous denial of plaintiff's claim.

In its partial motion to dismiss, defendant moved to dismiss

> (i) Count IV – Contract Interpretation; (ii) plaintiff's request for compensatory damages arising therefrom (*i.e.*, annual rent under the Phase II lease as if the Phase II lease had been renewed) and (iii) plaintiff's request for related declarations (*e.g.*, the Postal Service's "termination of the Phase II lease was arbitrary, capricious, wrongful, improper, and in violation of the parties' rights and obligations at law").

Defendant argues that plaintiff has failed to state a claim for relief under Count IV because "it cannot be reasonably disputed that the Phase II lease expired by its own terms." Defendant asserts that the original Phase II lease was set to expire on December 31, 2004, however, in July 2002, the parties executed an amendment to extend the Phase II lease until December 31, 2012. According to defendant, "the Phase I and II leases do not cover the same property and should be construed as two separate agreements." Defendant further argues that "the Postal Service had no further obligations under the Phase II lease after December 31, 2012, absent a renewal, which the Postal Service did not exercise."

**D I S C U S S I O N**

In examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2015); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not

> require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Vargas v. United States, 114 Fed. Cl. 226, 232 (2014); Fredericksburg Non-Profit Housing Corp. v. United States, 113 Fed. Cl. 244, 253 (2013), aff'd, F. App'x 1004 (Fed. Cir. 2014); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726–27 (2010), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Legal Aid Soc'y of New York v. United States, 92 Fed. Cl. 285, 292, 298, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). "A motion to dismiss will be

denied unless it appear to a certainty that no possible set of facts could be proved to support plaintiff's claims." Am. Satellite Co. v. United States, 20 Cl. Ct. 710, 712 (1990).

Defendant argues that the court should dismiss the claims in Count IV "to the extent they arise from an alleged improper termination of the Phase II lease" for failure to state a claim upon which relief can be granted. Specifically, defendant moves to dismiss "Stromness' claim for future rent for the entire Phase II space as if all the terms of the Phase II lease were still in force." Defendant alleges that the improper termination claim in Count IV in plaintiff's amended complaint fails to state a claim for relief because the lease expired by its own terms. In its motion, defendant asks the court to interpret the Phase I and Phase II lease agreements and to find that the leases are separate agreements. Defendant argues that the court should not consider extrinsic evidence, despite plaintiff's argument to the contrary, because, according to defendant, the Phase II lease was intended "to be the final, complete, and exclusive statement of the contract." Defendant asserts that plaintiff's "allegations that contradict the terms of the Phase II lease are the subjective intent of a party that should not be considered in interpreting the Phase II lease," and that, instead, the court should look to the terms of the Phase II lease to find that the intention of the parties "was that the Phase II lease was to expire on December 31, 2012." Defendant would have this court find that the Phase I and Phase II leases are separate agreements and that the Phase II lease expired on its own terms, such that, plaintiff's allegation that the termination of the Phase II lease was improper would necessarily fail to state a claim for relief as a matter of law because the mutual obligations of the parties to the Phase II contract expired upon the specified contract expiration date in the Phase II lease document, unless the parties expressly had provided otherwise.

In response to defendant's partial motion to dismiss, plaintiff argues that "there is an issue of fact as to the terms intended and agreed by the parties, which may not be resolved by a Partial Motion to Dismiss." According to plaintiff, "[t]he resolution of the intention of the parties, whether by parol evidence or otherwise, is not the proper subject for dismissal at this stage of the proceedings, particularly in the face of allegations which must be taken as true." To support its position that a partial dismissal is not appropriate in the above-captioned case at this stage, plaintiff points to several factual allegations in its amended complaint:

> Here, the Amended Complaint clearly (and repeatedly) alleges "the parties' understanding that both leases are to be read together as a single unified undertaking by the Postal Service," that "[f]rom the beginning the Postal Service treated the Magna facility as a single, unified property," treated "the two leases as 'Phases' of a single lease . . . [and] a single agreement in two parts," and that the parties understood, intended, and treated that the leases be read, integrated, and "interpreted together and as a whole."

(quotations, brackets, and ellipses in original).

Defendant counters that plaintiff's position "is wrong on the law and the facts." Defendant argues that it is appropriate, at this stage in the case, for the court to determine

the intent of the parties based only on the language of the Phase II lease itself. To support its position, defendant cites Greco v. Department of the Army, 852 F.2d 558, 560 (Fed. Cir. 1988); PCL Construction Services, Inc. v. United States, 47 Fed. Cl. 745, 785 (2000); David Nassif Associates v. United States, 557 F.2d 249, 257, 214 Ct. Cl. 407, 419-20 (1977); and California-Pacific Utilities Co. v. United States, 194 Ct. Cl. 703, 717 (1971). These cases, however, are distinguishable from the facts in the above-captioned case. Specifically, while the cases that defendant cites concern contract interpretation, the parties in Greco v. Department of the Army, PCL Construction Services, Inc. v. United States, and California-Pacific Utilities Co. v. United States did not dispute what agreement or documents were intended by the parties to constitute the underlying agreement subject to interpretation. See Greco v. Dep't of the Army, 852 F.2d at 560; PCL Constr. Servs., Inc. v. United States, 47 Fed. Cl. at 754-55; California-Pac. Utils. Co. v. United States, 194 Ct. Cl. at 712. In the above-captioned case, however, plaintiff alleges facts demonstrating that the parties dispute what agreements or documents represent the intended underlying agreement of the parties. Thus, plaintiff's amended complaint indicates that the parties' dispute involves not only the interpretation of contract terms, but also identifying which document, or documents, contain the full, integrated agreement, or agreements, of the parties. The facts that plaintiff alleges in its amended complaint suggest there is ambiguity in the Phase I and II leases regarding the parties' agreement about the Phase II construction and how that construction was intended to interact with the terms in the Phase I lease and the Phase II lease. Given this apparent, fundamental dispute, dismissal of plaintiff's improper termination claim is not appropriate at this time because it is not certain that plaintiff can prove no set of facts to support its claim. See United States v. Ford Motor Co., 497 F.3d 1331, 1336 (Fed. Cir. 2007); see also Am. Satellite Co. v. United States, 20 Cl. Ct. at 712.

Additionally, although in the above-captioned case defendant cites to David Nassif Associates v. United States to argue that this court's interpretation of the Phase II lease should only consider the plain language of that lease, the court in that case considered extrinsic evidence in order to resolve the parties' contract interpretation dispute. See David Nassif Assocs. v. United States, 557 F.2d at 257, 214 Ct. Cl. at 419-20. The court in David Nassif Associates v. United States explained that the parol evidence rule does not foreclose the court's ability to consider the circumstances surrounding the execution of an agreement to ascertain the finality and completeness of the agreement. See id. In the above-captioned case, plaintiff's factual allegations, if true, likely would require this court to consider evidence extrinsic to the Phase I and II lease agreements, such as the parties' actions and intent when the Phase I and Phase II leases were entered into by the parties and later amended. Although defendant cites the aforementioned cases to support its position that it is appropriate for the court to engage in contract interpretation on a partial motion to dismiss, an obviously correct premise in the proper case, each of the cases cited by defendant appear to have been resolved after significantly more development of the underlying facts and evidence in the referenced cases. See Greco v. Dep't of the Army, 852 F.2d 559-60; PCL Constr. Servs., Inc. v. United States, 47 Fed. Cl. at 759; David Nassif Assocs. v. United States, 557 F.2d at 257, 214 Ct. Cl. at 419-20; California-Pac. Utils. Co. v. United States, 194 Ct. Cl. at 717.

In its submissions to the court, defendant does not specifically address the facts plaintiff pleaded in its amended complaint. Instead, in its briefs, defendant only focuses on why the Phase II lease expired on its own terms. In its amended complaint, plaintiff makes several factual allegations, including that the "Postal Service created a two-phase lease," that "[f]rom the beginning the Postal Service treated the Magna facility as a single, unified property," that the "USPS drawings depict Phase I and Phase II as one contiguous, connected space, with no barriers between the phases," and that "the USPS used the entire facility as it saw fit, and without regard to dividing lines or designations in its leases." Plaintiff alleges that neither the Phase I nor Phase II leases were integrated agreements between the parties, instead, plaintiff alleges facts suggesting that the two leases may well have been connected and represented a single, integrated agreement between the parties. To rebut plaintiff's factual allegations, defendant argues that the two leases do not cover the same property and are separate agreements, however, defendant does not allege facts that refute plaintiff's allegations. Most pointedly, defendant does not sufficiently address plaintiff's factual allegation that the Postal Service treated the Magna postal facility as a single, unified property.

Presumed to be true, the facts alleged in plaintiff's amended complaint are sufficient to plausibly suggest that the parties did not, and do not now, share a mutual understanding of what constituted the underlying contract: whether it was a single, unified agreement with two-phases; or two separate contracts to lease different space in a single post office facility. See Erickson v. Pardus, 551 U.S. at 94. As noted in American Satellite Co. v. United States, "[a] motion to dismiss will be denied unless it appears to a certainty that no possible set of facts could be proved to support plaintiff's claims." Am. Satellite Co. v. United States, 20 Cl. Ct. at 712. Plaintiff has met this burden. Therefore, plaintiff's amended complaint is sufficient to plausibly suggest entitlement to relief based on an improper, partial termination of a contract, and defendant's partial motion to dismiss Count IV of plaintiff's amended complaint must fail at this time.

## CONCLUSION

For the reasons discussed above, defendant's partial motion to dismiss Count IV of plaintiff's amended complaint is **DENIED**. Future proceedings in this above-captioned case will be scheduled by separate order.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**